IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SHERYL S. DOBBRATZ,

                                                                 OPINION AND ORDER

                Plaintiff,

                                                                  12-cv-786-bbc

       v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Sheryl Dobbratz is seeking review of a decision denying her claim for disability benefits under the Social Security Act. 42 U.S.C. § 405(g). The administrative law judge concluded that plaintiff had severe impairments that prevented her from performing her past work, but found her not disabled because she still could perform limited, unskilled sedentary work in significant numbers in the national economy. Plaintiff says that the administrative law judge erred by not giving proper weight to the opinion of her treating physician, failing to call a medical expert to offer an opinion on the onset date of her fibromyalgia and inappropriately taking into consideration in his credibility assessment her daily activities and lack of medical treatment. Because I find that it was proper for the administrative law judge to rely on the evidence available during the critical period before the expiration of plaintiff's insured status, I am affirming the decision.

      The following facts are drawn from the administrative record (AR)

1

RECORD FACTS

Plaintiff Sheryl Dobbratz was born on June 26, 1962 and was 42 on the date she was last insured, which was December 31, 2008. She has past work experience as a machine operator and lead line worker. AR 22. On October 7, 2009, she filed an application for disability insurance benefits, claiming that she had been disabled since December 21, 2003 because of fibromyalgia and depression. AR 20, 129-33.

Plaintiff reported to the agency in her application that her condition had worsened progressively to the point that she was unable to sit, stand or walk for an extended period without suffering severe pain. She was unable to ride in a car for more than 20 minutes or sleep for more than two hours a night. Plaintiff also stated that she had become depressed recently because of chronic pain and that she was constantly tearful. AR 133. In a function report dated November 6, 2009, she indicated that she was able to do housework (dishes, laundry, cooking and vacuuming) for only about 20 minutes at a time before needing to rest. She also reported that once a week, she mowed the lawn on a riding mower and went grocery shopping. AR 158-62.

Plaintiff initially saw a chiropractor for right hip pain in June 2007. After several years of receiving only sporadic chiropractic treatment, she again sought treatment in May 2009, after her husband secured health insurance. Dr. Susan Stepanski diagnosed fibromyalgia, depression and restless leg syndrome and concluded that plaintiff had a variety of functional limitations as of March 2010, but she indicated that the limitations dated back only to May 2009, well after plaintiff's last insured date.

On May 20, 2011, plaintiff appeared via a video hearing before Administrative Law Judge William Zellman. She was represented by a lawyer, Charles Kreimendahl. AR 29-31. At the hearing, Kreimendahl stated that although there was limited medical evidence of plaintiff's condition between 2003 and 2009 because of her lack of access to medical care, plaintiff was looking for an onset date in 2007 or 2008 at the latest. AR 58-59.

Plaintiff's testimony included the following:

- During the winter months, she had worked as a seasonal employee at Swiss Colony as a lead line worker, a supervisory position. After Swiss Colony moved its operation to Madison in 2003, she never returned to work because standing six or seven hours a day would have been too hard for her. She was having hip, back and all-over muscle pain. AR 41-42. Her symptoms kept getting progressively worse over the years. AR 50-51. She agreed that if she had been given the option to sit and stand at will, she could have returned to work in 2003. AR 52.

- In 2003, plaintiff began getting chiropractic care. Although the adjustments helped only temporarily, she did not seek other medical care until May 2009 because she did not have health insurance. AR 42-43.

- In 2008 and 2009, she stayed at home with her grandchildren four to five hours, three or four days a week. She watched three grandchildren in 2008 and two grandchildren in 2009. The children were between two and four years old. By the end of 2009, it became too difficult for her to take care of them. AR 38, 47-48.

The administrative law judge denied plaintiff's claim on June 24, 2011. In his decision he found that plaintiff had severe impairments of degenerative joint disease of the hips, degenerative disc disease and obesity that prevented her from performing her past work. He reviewed the limited medical records, the opinion of plaintiff's treating physician (Dr. Suzanne Stepanski), the opinions of two state agency medical consultants (Robert

Callear and Phillip Cohen) and plaintiff's testimony. AR 19-22. He found that plaintiff's subjective complaints were not entirely credible for the following reasons:

- Plaintiff did not actively pursue treatment commensurate with the alleged severity of her symptoms through her last insured date.

- Plaintiff received only intermittent chiropractic care for neck, hip and back pain and used over-the-counter pain medication during the relevant period. There was no evidence of emergency treatment, hospitalization, pain or medication management, psychological treatment or therapeutic or rehabilitative services.
Plaintiff's reported activities undermined her credibility relative to the alleged severity of her symptoms through her last insured date.

AR 21-22.

The administrative law judge declined to give significant weight to the opinions of the state agency physicians, Dr. Callear and Dr. Cohen, who both concluded from the sparse medical records that plaintiff did not have a medically determinable impairment during the relevant period. AR 22, 227, 231. He wrote: "Giving great consideration to the claimant's subjective complaints and the fact that treatment notes subsequent to the date of last insured clearly diagnose the claimant with several impairments, the undersigned will assess them as severe impairments that likely existed during the relevant period (Exhibits 4F, 6F)." AR 22.

The administrative law judge noted that in May 2009, plaintiff had sought treatment for hip and back pain and cramping and swelling in her legs. AR 21, 211-12. He reviewed the fibromyalgia questionnaire completed by Dr. Stepanski on March 4, 2010, in which she wrote that plaintiff had fibromyalgia, depression and restless leg syndrome and

could stand for two hours, sit for four hours, bilaterally reach 80 percent of the time, bend 20 percent of the time, twist 30 percent of the time, occasionally lift 20 pounds, frequently lift up to ten pounds and miss more than three days of work a month. AR 248-53. The administrative law judge assigned the opinion little weight because Dr. Stepanski wrote that the earliest date that plaintiff's limitations applied was May 7, 2009, which was well after plaintiff's last insured date, and because the restrictions were inconsistent with plaintiff's reported activities and the "contemporaneous treatment notes." AR 22.

The administrative law judge concluded that plaintiff had the residual functional capacity to perform unskilled sedentary work that required no more than 45 minutes of continuous sitting without a one-minute to two-minute position change. As a result, he concluded that plaintiff could not perform her past relevant work, but, in reliance on the testimony of a vocational expert, he found that plaintiff had the residual functional capacity to perform jobs as a cashier, credit worker, inspector/tester, hand worker/assembler and machine tender. AR 20, 22-23.

On August 21, 2012, the Appeals Council declined to review the case. AR 6.


OPINION

Plaintiff faces a significant obstacle on appeal because she has very little evidence predating her last insured date of December 31, 2008. Shideler v. Astrue, 688 F.3d 306, 311 (7th Cir. 2012) (regardless what condition claimant is in at hearing, she must establish that she was disabled before expiration of her insured status to be eligible for disability

5

insurance benefits). As the Court of Appeals for the Seventh Circuit has held, "[t]he claimant bears the burden of producing medical evidence that supports her claims of disability. That means that the claimant bears the risk of uncertainty, even if the reason for the sparse record is simply a long lapse of time." Eichstadt v. Astrue, 534 F.3d 663, 668 (7th Cir. 2008). The medical records available in this case mainly reflect plaintiff's later health condition and the treatment that she received after the expiration of her insured status. Apart from the sketchy chiropractic records, the only evidence of plaintiff's condition prior to the expiration of her insured status are the nonspecific reports of her symptoms in her disability application and her hearing testimony, both of which the administrative law judge found to be not entirely credible.

Plaintiff contends that the administrative law judge should have extrapolated plaintiff's past limitations from Dr. Stepanski's 2010 opinion, called a medical expert to clarify her onset date and placed greater weight on her subjective reports. For the reasons explained below, I find that the administrative law judge properly considered the evidence of record in determining that plaintiff failed to meet her burden of showing that she was disabled before the expiration of her insured status. Eichstadt, 534 F.3d at 666 (finding same where plaintiff was able to obtain very little information from period prior to expiration of her insured status).

6

A. Treating Physician Opinion

Although the administrative law judge reviewed Dr. Stepanski's opinion that fibromyalgia significantly limited plaintiff's functional capacity, he dismissed it as unhelpful because it applied only to the period following the expiration of plaintiff's insured status. Plaintiff points out that Dr. Stepanski did not state that she had no impairment before May 2009 and argues that the administrative law judge could have inferred that she had been experiencing symptoms of fibromyalgia for several years prior to her diagnosis. In support, she cites her reports of pain to her chiropractor and the extensive written statements and oral testimony that she provided on how her condition limits her day-to-day functioning. As the administrative law judge pointed out, however, plaintiff did not clearly identify when her symptoms began or how limiting they were between 2003 and 2008. She testified that if she had been given the option to sit and stand at will at her job in 2003, she probably could have returned to work, which suggests that her symptoms were not disabling at that point.

Apart from her own general reports of pain, plaintiff points to nothing in the record indicating that she had fibromyalgia before her last insured date. Instead, she insists that the administrative law judge should have surmised this from Dr. Stepanski's later diagnosis. However, it would be unreasonable and inappropriate to expect the administrative law judge to see signs of fibromyalgia when neither plaintiff's treating physician nor two state agency physicians could do so. Eichstadt, 534 F.3d at 666 (current disability does not prove earlier disability where plaintiff offered nothing that foreshadowed fibromyalgia that was to come); Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the

temptation to play doctor and make their own independent medical findings."). See also Chase v. Astrue, 458 Fed. Appx. 553, *3 (7th Cir. Jan. 30, 2012) (administrative law judge "may not 'play doctor' by using his own lay opinions to fill evidentiary gaps in the record"). I conclude that the administrative law judge did not err in giving little weight to Dr. Stepanski's 2010 opinion.

### B. Lack of Medical Expert

SSR 83–20 states that

> How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

Plaintiff contends that the ruling required the administrative law judge to call a medical expert in her case because the onset date of her disability was at issue. However, the court of appeals rejected this argument in a similar case, finding that the ruling imposes no such command. Eichstadt, 534 F.3d at 666-67. The court pointed out that the ruling "describes something that the ALJ 'should' do, rather than something he or she 'must' do or 'shall' do, implying that the ultimate decision is up to the ALJ." Id. at 667. "In addition, the ruling speaks of the need for a 'legitimate medical basis' for the ALJ's judgment and the need for 'additional' evidence about onset." Id. As in Eichstadt, a medical expert in this case would have been providing the *only* evidence in the record about plaintiff's condition before the

8

expiration of her insured status. Id. ("It is [] difficult to see how any medical examiner could have provided an opinion, grounded in the requisite 'legitimate medical basis,' that [plaintiff's] now-diagnosed fibromyalgia rendered her 'disabled' as early at 1986 or 1987."). As a result, the administrative law judge did not err in failing to call a medical expert.

### C.  Credibility Determination

Generally, an administrative law judge's determinations regarding credibility are entitled to deference because that judge has the ability to see and hear the testimony, but that deference does not excuse the administrative law judge from explaining the reasons for his determination. Castile v. Astrue, 617 F.3d 923, 929 (7th Cir. 2010). The administrative law judge still must build an "accurate and logical bridge" between the evidence and his decision. Id.  A credibility determination will be overturned only if it is "patently wrong." Eichstadt, 534 F.3d at 668.

The administrative law judge gave two reasons for not finding all of plaintiff's subjective complaints credible, and plaintiff finds fault with both.  First, he noted that plaintiff did not actively pursue treatment commensurate with the alleged severity of her symptoms through her last insured date.  There was no evidence that plaintiff sought emergency treatment, was hospitalized, or accessed pain management, psychological treatment or other therapeutic services.  He pointed out that plaintiff received only intermittent chiropractic care for her neck, hip and back pain and used over-the-counter pain medication.

9

"Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference." Shauger v. Astrue, 675 F.3d at 696-97. In this case, there was evidence in the record and at the hearing that plaintiff did not seek treatment because she did not have health insurance and could not afford it. E.g., AR 43, 260. Because the Social Security Agency "has expressly endorsed the inability to pay as an explanation excusing a claimant's failure to seek treatment," Roddy v. Astrue, 705 F.3d 631, 638 (7th Cir. 2013) (citing SSR 96–7p at *8), the administrative law judge should have addressed plaintiff's explanation explicitly in reaching his credibility determination. That said, the administrative law judge logically could conclude from the evidence of record that if plaintiff was able to obtain some chiropractic treatment while she was uninsured, she could have sought at least minimal medical assistance between 2003 and 2009 if she had been in great discomfort. Denton v. Astrue, 596 F.3d 419, 424 (7th Cir. 2010) (citing 20 C.F.R. § 404.1512(c); Scheck v. Barnhart, 357 F.3d 697, 702 (7th Cir. 2004)) (claimant "bears the burden of producing medical records showing her impairment, and if she never sought medical treatment for a condition, then she cannot meet that burden"). In any event, to the extent that the administrative law judge erred in not further considering plaintiff's lack of health insurance, that error was not fatal because he had other good reasons for not crediting plaintiff's subjective complaints as evidence that she had a disabling condition prior to her last insured date. Elder v. Astrue, 529 F.3d 408, 413-14 (7th Cir. 2008) ("It is only when

the ALJ's determination lacks any explanation or support that we will declare it to be 'patently wrong.'").

In addition to lack of treatment, the administrative law judge found that plaintiff's reported activities were inconsistent with the alleged severity of her symptoms, at least through her last insured date. As plaintiff notes, administrative law judges must use caution in relying on a claimant's ability to perform "daily activities." The court of appeals has "repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." Roddy, 705 F.3d at 639; see also Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons and is not held to a minimum standard of performance, as she would be by an employer.").

In this case, the administrative law judge noted that plaintiff shopped once a week (for as little time as possible), cooked simple items, washed dishes, did laundry, vacuumed (with one break to walk around), and mowed her lawn (also with one break to walk around). Although I agree with plaintiff that some of these activities are limited and do not translate into an ability to work full-time, the administrative law judge also pointed out that as late as 2009, plaintiff was taking care of her three grandchildren several hours a day, three to four days a week. AR 21, 47-48, 209. At that time, her grandchildren would have required a

11

considerable amount of care because they were between two and four years old. In September 2010, a physician noted that plaintiff still cooked for her grandchildren. AR 260.

Overall, I am satisfied that the administrative law judge accurately represented plaintiff's daily activities and properly inferred that they showed plaintiff's pain was not so severe as to prevent her from performing unskilled sedentary work that required no more than 45 minutes of continuous sitting without a one-minute to two-minute position change. The administrative law judge's findings were proper, given the lack of evidence available with respect to plaintiff's condition during the critical period prior to her date last insured. Eichstadt, 534 f.3d at 668. As defendant notes, he gave plaintiff every benefit of the doubt in assessing her with a limited residual functional capacity. Accordingly, the commissioner's decision will be affirmed.

ORDER

IT IS ORDERED the decision of the commissioner is AFFIRMED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 26th day of July, 2013.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge